# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

APRIL TERM, 1910.

*(Continued from Volume 227)*

THE STATE ex rel. J. HOMER WILLIAMS v. H. B.
PURL et al., Constituting State Board of Dental
Examiners.

In Banc, May 13, 1910.

1. **DENTISTRY: Practice: Fraud and Deceit.** Proof before the
State Dental Board that relator advertised to do certain dental
work for 20 cents, but always charged more; that he repeatedly
advertised to furnish "the best set of teeth for one dollar" and
never fulfilled said promise, but that it was impracticable if
not impossible for a dentist to furnish "the best set of teeth
for one dollar"; that he repeatedly advertised that he "re-enam-
eled teeth," whereas there was no such thing known in dentis-
try as re-enameled teeth; that he advertised "Pyorrhea cured,"
whereas it was curable only in rare cases and in the early
stages of the disease; that he advertised "teeth made without
bridges or plates," whereas such work was unknown to dentis-
try; that he advertised "to make new gold dust plates with
best teeth for one dollar," thereby intending the public to un-
derstand he furnished plates made of gold dust, and therefore
of fine quality, "with best teeth," for one dollar, whereas there
was no such thing in dentistry as a plate made of gold dust;
that he advertised to put in "gold alloy" fillings for twenty-

five cents, whereas the metal he used had not the appearance of gold, but was of a dark lead color, and a cheap material, "gold alloy" being merely a trade name for the material; and that by means of said advertisements he unjustly obtained various sums of money, is sufficient to support the finding by the said board that such advertisements were untrue and constituted "fraud, deceit and misrepresentations in the practice of dentistry," and were intended to and did deceive and defraud the public, and authorized said board, under the statute, to revoke and withhold from relator a license to practice dentistry.

2. ———: ———: **Revoking License for Fraud: Constitutional Statute: Caprice.** The statute (Laws 1905, p. 215) authorizing the State Dental Board "to revoke and annul" any license to practice dentistry "for fraud, deceit or misrepresentations in the practice of dentistry," is constitutional. Those words are not void for uncertainty, in that their interpretation is left to the caprice, whims and ever-changing ideas of professional ethics of those who happen to constitute the board. They have well understood legal meanings, and were used in their ordinary, plain and usual sense.

3. ———: ———: ———: ———: **For Gross Violation of Professional Duty.** If the words "for gross violation of professional duty" alone expressed the grounds for which the board might revoke a dentist's license there would be force in the contention that the statute is unconstitutional; but those words were used to cover offenses similar to and belonging to the same class as those denounced by the words "fraud, deceit and misrepresentations in the practice of dentistry," which they immediately follow, and therefore they do not invalidate the statute.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Stubbs & Stubbs* for relator.

(1) The finding against relator is general; there is no mention of any one of the specified charges but he is found guilty of them all by the statement that respondents "find, ascertain and determine that said J. Homer Williams is guilty as charged of fraud, deceit and misrepresentation in the practice of dentistry and

gross violation of professional duties." It seems to the relator that it is apparent from this first finding of the commissioner that respondents did him a manifest injustice, and for this simple reason: Relator was entitled to be acquitted or condemned on the evidence produced at the trial, and not upon the secret, and unexpressed at the time, opinions of the respondents, professional or otherwise. Relator was entitled to a fair trial. He did not get it. If respondents "knew," as they allege in their return, that there was no such thing as "re-enameling teeth," or making "teeth without bridges or plates" or if they "knew" there was no such thing as "gold alloy" filling, or that the relator could not cure pyorrhea because he was an advertising dentist, then they should have evidence of such facts at the trial, and not accept as proven facts against relator such assumed knowledge on their part, which was contrary to the evidence at the trial, and which is disproved and made ridiculous by their own testimony before the commissioner. (2) The second finding of the commissioner is to the effect that the respondents acted in good faith on the trial of relator, and that there was no evidence to the contrary before the commissioner. This finding responds to no issue tendered by the pleadings in this court. Relator has not charged respondent with bad faith. He does insist that he was done a manifest injustice by the finding and judgment, but does not charge ulterior motives in the respondents. (3) The evidence at the trial was not sufficient to warrant the finding and judgment against the relator; and on the determination of this question of fact his action is entitled to fall or stand; and the commission was not issued for the purpose of finding out or discovering other evidence than that produced at the trial in order to supply whatever may have been wanting at the hearing. (4) The commissioner begins by reporting to your honors that there was no substantial evidence that relator ever fulfilled

such promise. The commissioner has the cart before the horse. The commissioner seems to assume that the burden is on the relator of proving his innocence; that relator is presumed to be "guilty as charged" until the contrary is established by "substantial evidence." There was no evidence on this question at all at the trial of relator. (5) That portion of the statute authorizing the respondent board to revoke a dentist's license for "fraud, deceit and misrepresentation in the practice of dentistry, or for gross violations of professional duties," is void for uncertainty; because the grounds for which it authorizes the revocation of a dentist's license have no fixed or determined meaning in law or elsewhere, but are left for interpretation to the caprice and whims, the never certain, ever changing notions of dental ethics of whoever happens at the time to compose the State Board of Dental Examiners. Section 8528, R. S. 1899, as amended in 1905; State ex rel. v. Board of Health, 103 Mo. 22; McCleary v. Adcock, 206 Mo. 550; Macomber v. Board of Health, 8 L. R. A. 586; People v. McCoy, 125 Ill. 289; Allison v. Gen. Cncl. Med. Ed. & Reg., 1 Q. B.; State ex rel. v. Med. Exrs., 34 Minn. 391; State ex rel. v. Goodier, 195 Mo. 551; State ex rel. v. Kellogg, 14 Mont. 426; Board of Health v. Roy, 22 R. I. 538; Meffert v. Board, 66 Kas. 710; Chapman v. Med. Exrs., 34 Minn. 387.

*W. E. Owen* and *A. N. Adams* for respondent.

(1) The duties of the dental board are of an administrative or ministerial character, and, therefore, as long as its acts are within the scope and exercise of a reasonable discretion it is free to act. This discretion must always be reasonably exercised, and if, under the facts, there is a fair, reasonable and substantial basis to sustain the act and findings of the board in revoking the license of relator, such discretion cannot be controlled by writ of mandamus, although the court might on weighing the evidence have possibly

come to a different conclusion from that reached by the board. State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Board of Health, 115 Mo. 36; State ex rel. v. Goodier, 195 Mo. 551; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Gregory, 83 Mo. 123. (2) The examination and investigation of the truth or falsity of the charges against relator before the board is not required to take on the formality of a judicial investigation, nor must the technical rules of evidence applicable to that examination be followed. The law contemplates that a plain, honest, and common-sense investigation be made in good faith, as thorough as may be had on evidence obtained on either side, like an investigation that fair minded men would make in their own business, concerning the alleged misconduct of one of their own employees. State ex rel. v. Goodier, 195 Mo. 551; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Board of Health, 115 Mo. 36; Meffert v. Medical Board, 66 Kas. 710; State v. Duluth, 53 Minn. 238; Traer v. Medical Board, 106 Ia. 559; People v. Thompson, 94 N. Y. 451; Munk v. Frink, 116 N. W. (Neb.) 525; People v. Smith, 200 Ill. 444. (3) The Dental Statute, sec. 8528, R. S. 1899, as amended by Laws 1905, authorizing the dental board to revoke an original license, "for fraud, deceit, or misrepresentation in the practice of dentistry, or for gross violations of professional duties," is not void for uncertainty and indefiniteness in its provision; its interpretation is not left to the whim and caprice of a dental board, but the terms of the statute have a settled meaning, not only according to common sense and experience, but under the law. (a) The regulation of the practice of medicine, dentistry, law, and all the learned professions is fully within the police power of the State; and the Legislature has plenary power to prescribe the rules and regulations under which dentists may be licensed to begin the practice, or upon which licenses may be refused, or upon which a license

once issued may be revoked; and the Legislature may provide that, for the same causes for which a license may be refused in the first instance, it may thereafter be revoked by the dental board, which is but the administrative agent of the State, and represents the power of the State acting through such administrative body. State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Board of Health, 115 Mo. 36; State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Medical Board, 34 Mo. 387; State ex rel. v. Medical Board, 32 Minn. 324; Board of Health v. McCoy, 125 Ill. 289; Williams v. People, 121 Ill. 84; Hawker v. New York, 170 U. S. 189; Dent v. West Virginia, 129 U. S. 114; Gray v. Conn., 159 U. S. 74; Reetz v. Mich., 188 U. S. 550; Meffert v. Packer, 66 Kan. 710; 1 L. R. A. (N. S.) 811; Affirmed in 195 U. S. 625; Board of Health v. Roy, 22 R. I. 538; Smith v. Medical Examiners, 117 N. W. (Ia.) 1118; State ex rel. v. Lutz, 136 Mo. 633; State ex rel. v. McIntosh, 205 Mo. 636; State v. Kellogg, 14 Mont. 426; State v. Schultz, 11 Mont. 429; State ex rel. v. Adcock, 225 Mo. 335. (4) As a general rule a writ of mandamus will not issue where the right of the relator depends on holding an act of the Legislature unconstitutional. State ex rel. v. McIntosh, 205 Mo. 589; Hart v. Folson, 70 N. H. 213; Morse v. State Board, 122 S. W. 449; State v. Douglass Co., 18 Neb. 506; Ex parte Mackey, 15 S. C. 330; 19 Am. and Eng. Ency. Law (2 Ed.), p. 763.

WOODSON, J.—This is an original proceeding by mandamus, instituted by the relator in this court, to compel the respondents, the State Board of Dental Examiners, to rescind an order theretofore made by it revoking the license of relator to practice dentistry; to reinstate his original license; and to issue him a renewal license for the year 1909. An alternative writ was issued and served, and in due time respond-

ents filed their return. The reply denied certain allegations contained in the return, and thereby tendered certain issues of fact for determination. Thereupon the court appointed Mr. Elliott H. Jones of the Kansas City bar, a special commissioner to hear the evidence, make a finding of the facts, and report them, together with the evidence taken in the cause, to this court.

In pursuance to that order, the commissioner set the cause down for hearing and notified all the parties, who appeared and introduced their evidence. The commissioner heard all the evidence, made a finding of the facts, and reported them, with the evidence taken, to this court.

Since no question is raised as to the sufficiency of the pleadings, and as the findings of the commissioner are fairly embraced within the issues joined, it will be unnecessary to burden this opinion by setting out the pleadings, which are quite lengthly.

The report of the commissioner is in words and figures as follows:

"1. The commissioner finds that on October 29, 1908, respondents in this cause, constituting the State Board of Dental Examiners of the State of Missouri, heard complaints, and evidence thereon, against relator, J. Homer Williams, concerning his conduct in the practice of dentistry in this State, it being charged before said board that said J. Homer Williams had been guilty of fraud, deceit and misrepresentation in the practices of dentistry and of gross violation of professionel duties. Your commissioner finds that the evidence produced at such trial before said State Dental Board was as follows:

"First. The oral testimony of witnesses, Mrs. Eliza Lenheurr, Jean G. Strickland, Minnie Gail, Carrie Schmeltz, J. Homer Williams, Mrs. Jennie B. Williams, Dr. Charles George Loney, G. W. Stubbs, and Oliver R. Wroughton, also the affidavits of W. A. Gipson, Herbert H. Clark and S. J. Polin, and certain

testimonial letters, which said letters and affidavits, together with the testimony of said witnesses, were transcribed by Mrs. George M. Haden, and attached to relator's bill in this cause, marked 'Exhibit B.'

"Second. Relator J. Homer Williams produced before said dental board at said hearing his ledger or account book said to contain a description of the dental work done in his dental office and charges made for such work, and relator examined said book for some minutes in the presence of said board, and thereupon announced that he was unable to find any charges for work done for twenty cents or twenty-five cents as advertised. Thereupon said books were passed to the members of the dental board who examined the contents thereof.

"Third. The members of the said State Dental Board, who conducted said trial, being all of respondents except Dr. H. B. Purl, who was absent, made an examination of the dental work done by relator upon the teeth of Mr. Jean G. Strickland, Miss Minnie Gail and Mrs. Carrie Schmeltz.

"Fourth. Said members of the State Dental Board also examined certain advertisements (copies of which were set out in the return to the alternative writ of mandamus) shown to have been inserted by relator in various newspapers, which advertisements were offered in evidence, and are as follows:

State ex rel. v. Purl.

## EXHIBIT A.

### SPECIAL. BEST TEETH. $1.

[Here is shown a picture of a plate with teeth, across which is written "20-year guarantee."]

Until May 1st we have decided to make our new gold dust plates with best teeth for one dollar. Do not cover roof of mouth; Lightest plate known. Guaranteed to bite corn off the cob.

Best set of Teeth .................................$ 1.00
Bridge Work Guaranteed ........................... 2.75
12 K. Gold Crowns ............................... 2.50
Gold fillings .................................... .50 up.
Silver fillings ...................................... .20
Teeth extracted without pain ....................... .20

### "WILLIAMS PAINLESS DENTISTS.

1007 Main St.

Loose Teeth Tightened. Open daily. Sundays 9 to 4. Evening till 9.

## EXHIBIT B.

$2. .                                Loose Teeth Tightened.

[Here is shown a picure with a plate with teeth, across which is written "J. Homer Williams, 1007 Main."]

### BEST TEETH.

Are made by the original Williams system without bridges or plates. Illustrated book free.

### PYORRHEA CURED.

Prices until Sept. 20:

Full set of teeth .....................................$2.00
Crowns ............................................. 2.00
Teeth extracted without pain ........................ .20
Bridge work .......................................... 2.00
Gold fillings ........................................ .50
Silver fillings ....................................... .20

[Here is shown a cut of plate with teeth, across which is written "FREE, NO MONEY."]

## EXHIBIT C.

We will do all cleaning, gold alloy filling and extracting by our new painless methods for only 25 cents, to pay part cost of material if you come before July 10.

Teeth re-enameled.

Teeth made without bridges or plates.

Loose teeth tightened. All work guaranteed.

Send for free book about teeth.

DR. WILLIAMS, Specialist, 1007 Main St.

Hours 8 to 8.                          Sundays, 9 to 4.

"And your commissioner finds that in arriving at their decision in the matter of the complaints and charges against Dr. J. Homer Williams, the said members of the State Dental Board took into consideration said testimony of witnesses, a transcript of which is filed with relator's bill herein and marked 'Exhibit B,' the information derived from relator's ledger or account book, also their conclusions formed from an examination of the work done by the relator upon the teeth of the persons mentioned, and also their opinion as to the said advertisements published by relator, and as to whether or not said advertisements were honest or fraudulent; such opinions being formed by respondents from their expert knowledge in such matters gained from the study of dentistry and their experience in the practice of dentistry; and your commissioner finds and reports that the aforementioned evidence was all that came before said dental board in the matter of said complaints and charges against relator and J. Homer Williams.

"2. Your commissioner finds the fact to be from the evidence that the respondents, constituting the State Dental Board, received all the evidence before said board, and had a full hearing in the matter of the trial of said complaints and charges against relator J. Homer Williams, and that they carefully considered all such evidence; that such trial was conducted in a fair and impartial manner; and that in arriving at their conclusion and decision upon said charges the board did not act arbitrarily, but in good faith, and in conscientious performance of their duties as such board. No evidence to the contrary was ever produced before me.

"3. Your commissioner further reports that he has carefully examined the evidence adduced before said State Dental Board upon the said trial of J. Homer Williams, and from such evidence and examination thereof finds the fact to

be that there was substantial proof adduced before
the said State Dental Board at said trial tending to
show that said J. Homer Williams had been guilty
of fraud, deceit and misrepresentation in the practice
of dentistry, and of gross violation of his professional
duties as a dentist; that there was substantial and very
conclusive evidence adduced before said State Dental
Board to prove that said J. Homer Williams had been
guilty of a violation of his professional duties as a
dentist toward his patients, Mrs. Eliza Lenheurr and
Miss Minnie Gail, and there was some evidence to
show a violation of professional duties toward his
patient, Jean Strickland. The commissioner finds that
there was substantial evidence adduced before said
State Dental Board tending to prove that said J.
Homer Williams had been guilty of fraud, deceit and
misrepresentation in the practice of dentistry in this,
to-wit:

"1.   That he had advertised at certain times to
do certain dental work for twenty cents and at other
times for twenty-five cents, but that it appeared from
his books that he had never made a charge of twenty
cents or twenty-five cents for such work as advertised,
but in all circumstances charged more than that amount
for such work.

"2.   That relator had repeatedly advertised that
he would furnish to patients 'the best set of teeth
for one dollar' and there was no substantial evidence
to show that he had ever fulfilled such promise, but
there was much evidence that it was impracticable if
not impossible for a dentist to furnish 'the best set of
teeth for one dollar,' as such set of teeth could not be
bought by the dentist in the first place for less than two
dollars, and to that cost must be added his labor of
finishing and fitting the teeth to the mouth of the pa-
tient.

"3.   That relator repeatedly advertised that he
're-enameled teeth,' whereas there was no such thing

known or possible in dentistry as re-enameling teeth. Relator's only defense of this advertisement was that in his practice he used a substance for filling cavities known as 'Ascher's Artificial Enamel.' Relator admitted that this substance was used merely to fill cavities, just as gold or silver or any other amalgam would be used for filling cavities, but that it was never used and could not be used to spread over teeth to replace or take the place of the natural enamel.

"4. That relator advertised 'pyorrhea cured' and it was the opinion of the members of the State Dental Board as skilled and experienced dentists, and they so testified, that the disease of pyorrhea was curable only in rare cases, if at all, in the early stages of the disease, and that it was a misrepresentation and deceit to advertise a general and unqualified ability and promise to cure such disease.

"5. The relator advertised 'teeth made without bridges or plates,' whereas such work was unknown to dentistry. In defense of this advertisement relator produced before the commissioner and the members of the dental board a piece of dental work offered in evidence as a part of the testimony of Dr. C. G. Loney, before the commissioner. Dr. Loney designated this as 'saddle bridge' that was at one time in common use with dentists but had now to a large extent been discarded. It had the appearance of ordinary bridge or plate work.

"6. That relator advertised 'to make our new gold dust plates with best teeth for one dollar,' and to put in 'gold alloy' filling for twenty-five cents, thereby intending the public to understand that he furnished plates made of gold dust, and therefore of fine quality, with 'best teeth' for one dollar, and that he put in fillings of an alloy composed substantially of gold, for twenty-five cents; whereas it was shown by the evidence, and admitted by relator, that there was no such thing in dentistry as a plate made of gold

dust, and that the material which he used to make fill-
ings, advertised as 'gold alloy' filling, had not the ap-
pearance of gold, but was of dark lead color, was a
cheap material, and had very little, if any, gold in it,
'gold alloy' being merely a trade name for the material.
In defense of his advertisement 'to make our new gold
dust plates with best set of teeth for one dollar' relator
produced before the commissioner and the members
of the dental board an ordinary rubber material for
making hard rubber plates, and which sold under the
brand or trade name of 'gold dust' rubber plate.

"7.  That such advertisements of relator were
intended to make the public believe that they would
get something different and better than they actually
did receive from Dr. Williams's office, and something
different and better than that which they would receive
from the offices of other dentists, and that the same
would be had at a much lower price than is usually
charged by dentists; that such advertisements were,
therefore, untrue and constituted 'fraud, deceit and
misrepresentation in the practice of dentistry.' "

The commissioner finds that the State Dental
Board fairly concluded that the advertisements of re-
lator were not truthful but were intended to deceive
and defraud the public and did so deceive.  And the
commissioner further finds, both from the evidence
submitted before the dental board, and also the evi-
dence adduced by both sides before the commissioner,
that said advertisements were intended to deceive and
defraud the public, and the same constituted fraud,
deceit and misrepresentation in the practice of den-
tistry.

"4.  Your commissioner finds that it is admitted
in the pleadings, that relator, J. Homer Williams, was
licensed by the State Board of Dental Examiners for
the State of Missouri, as a dentist in the year 1903,
and that he annually renewed his license as such den-
tist up to the 30th day of November, 1908, and that

on or before said 30th day of November, 1908, relator paid to said dental board a fee of one dollar and demanded a renewal of his license to practice dentistry for the year beginning with November 30, 1908, and that respondents denied and refused, and still refuse, to renew relator's license.

"5.   Upon the issue made by the return of the alternative writ of mandamus to the effect that 'relator has since respondents revoked his said license, continued to publish these false and fraudulent advertisements; and that he has continued to practice dentistry in Kansas City in the State of Missouri, without having any license or authority so to do, in open defiance of laws of the State of Missouri, and is still doing so,' the commissioner finds that relator, J. Homer Williams, did dental work for Mrs. Anna Metcalf in or about the month of March, 1909, and since the said State Dental Board refused to renew his license to practice dentistry; that relator at said time put on a gold crown for said Anna Metcalf and received from her a check for $4 in payment for such dental work.   Relator claims that he did not do this work for Mrs. Metcalf, but that it was done by Dr. Loney of his office, but Mrs. Metcalf positively identified relator as the one who did this work for her, and testified that the crown came loose a short time after it was put on, and that she then went back to relator's office and the crown was then refitted by another dentist, whom she identified as Dr. Loney.   The witness was a very intelligent one, and apparently entirely without prejudice or partiality, and was very positive in her identification of relator, and as to the work he did for her; and I do not think she could have been mistaken.

"There was some testimony that Dr. Williams, the relator, had done some dental work for one George O. Mitchell, a detective, on December 22, 1909, but such testimony was very unsatisfactory, and the commis-

sioner, therefore, finds that such charge was not sustained by the evidence. There was no substantial evidence that relator had done any other dental work since the dental board had refused to renew his license in November, 1909.

"As to relator's advertisements since said date, it appears that Dr. Williams incorporated his business a few days after the date on which the dental board refused to renew his license, and that all advertisements thereafter have been published over the name of the corporation, 'The J. Homer Williams Dental Company.'

"The commissioner returns a transcript of all the testimony offered before him, to which are annexed the original exhibits offered in evidence by the respective parties."

Then follows the signature of the commissioner.

To the report of the commissioner the relator filed the following exceptions, omitting the title and caption:

"Comes now the relator and excepts to the report of the findings of fact of the special commissioner herein in the following particulars, to-wit:

"1st. Relator excepts to the findings and report of the said commissioner as found and made in paragraph two, to the effect that said respondents did not act arbitrarily in the premises, for the reason said report and finding is contrary to the evidence, is against the weight of the evidence, and is not supported by the evidence and contrary to law, and for further reason said finding and report are not authorized or warranted by the commission herein in that said commission directs the commissioner herein to report only the facts as to what evidence was offered, received and considered by the respondents at the original hearing before said board.

"2d. Relator excepts to all and singular the findings and report of said commissioner as found in

paragraph three, for the reason each and all of the findings therein are contrary to law, immaterial, against the evidence and the weight of the evidence; and for the further reason said findings and report are not authorized or warranted by the commission herein, in that said commission directs the commissioner herein to report only the facts as to what evidence was offered, received and considered by the respondents at the original hearing before said board.

"3d. Relator excepts to the findings and report of said commissioner in paragraph five, to the effect that relator did dental work for Mrs. Anna Metcalf in or about the month of March, 1909, for the reason said finding is immaterial, is against the evidence and the weight of the evidence, and not supported by the evidence and is contrary to law, and for further reason said finding and report are not authorized or warranted by the commission herein, in that said commission directs the commissioner to report only the fact as to what evidence was offered, received and considered by the respondents at the original hearing before said board."

I. The substance of the charge preferred against the relator was that he had committed fraud and deceit upon his patients and made misrepresentations to them in the practice of dentistry, and was guilty of gross violation of professional duties. Those charges were as follows (formal parts omitted): .

"Kansas City, Jackson County, Missouri,

"September 23, 1909.

"To the State Board of Dental Examiners for the State of Missouri.

"Dr. S. C. A. Rubey, Secretary, Clinton, Missouri.

"Charges of fraud, deceit and misrepresentation in the practice of dentistry, and of gross violation of professional duties, against J. Homer Williams, of 1007 Main street, Kansas City, Missouri, State of Missouri, county of Jackson, ss.

"Jean G. Strickland of Kansas City, Missouri, Jackson county, of lawful age, upon his oath presents to the State Board of Dental Examiners for the State of Missouri, that one J. Homer Williams, of Kansas City, Jackson county, Missouri, being then and there a practicing dentist and being then and there a holder of a certificate of registration and license to practice dentistry in the State of Missouri, issued by the Board of Dental Examiners for the State of Missouri, was at the times herein mentioned guilty of fraud, deceit and misrepresentation in the practice of dentistry and of gross violation of professional duties, in this, to-wit:

"1.  That on or about August 15, 1907, at the office of said J. Homer Williams, at 1007 Main street, Kansas City, Jackson county, Missouri, affiant, Jean G. Strickland, consulted the said J. Homer Williams professionally, and at affiant's request he made an examination of affiant's teeth and did then and there falsely and fraudulently represent and state to and agree with affiant after making said examination that he would fill affiant's teeth with gold and would make affiant a gold bridge of four teeth and put in one gold crown and do first class work for the sum of thirty dollars.  Whereas in truth and in fact, said J. Homer Williams did fill affiant's teeth with cement and silver and did make a bridge of counterfeit of gold and did inferior work; that said representations and statements so made to affiant by said J. Homer Williams were false and fraudulent and that said work done by said J. Homer Williams was fraudulently done; that said representations and statements so made to affiant were well known by J. Homer Williams to be false and fraudulent at the time he made them, and were made by him for the purpose of inducing affiant to employ him for a fee, salary or reward to him to be paid to perform said dental work, that said J. Homer Williams

did by said false and fraudulent representations and statements and knowing them to be false and fraudulent induce affiant to employ him and did procure a fee, salary or reward from affiant.

"2. That on or about March 28, 1908, at the office of said J. Homer Williams, at 1007 Main street, Kansas City, Missouri, Miss Carrie Schmeltz consulted the said J. Homer Williams professionally and at her request the said J. Homer Williams made an examination of her teeth and did then and there falsely and fraudulently represent and state to her after making said examination that two of her front teeth were loose. Whereas, in truth and in fact, only one of said teeth was loose; that the said J. Homer Williams did then and there falsely and fraudulently represent and state to the said Carrie Schmeltz that a certain front tooth of hers was loose, when in truth and in fact said front tooth was not loose and the said J. Homer Williams well knew at the time he made said representation and statement that said tooth was not loose; that the said J. Homer Williams did then and there make said false representation and statement, knowing it to be false, for the purpose of procuring the said Carrie Schmeltz to submit to having said tooth treated by the said J. Homer Williams, and for the purpose of procuring wrongfully and fraudulently from the said Carrie Schmeltz a fee, salary or reward and the said J. Homer Williams did then and there, through said false and fraudulent representation and statement procure said Carrie Schmeltz to submit to having said tooth treated, which was unnecessary, and did then and there wrongfully and fraudulently procure through said false and fraudulent representation and statement from said Carrie Schmeltz a fee, salary or reward of ten dollars.

"3. That on or about June 8, 1908, Mrs. Eliza Lenheurr, of 4028 Highland avenue, Kansas City, Missouri, after reading an advertisement of the said J.

Homer Williams in Kansas City, Missouri, went to the office of said J. Homer Williams at 1007 Main street, Kansas City, Jackson county, Missouri, to consult him professionally and to have some dental work done by the said J. Homer Williams; that while the said Mrs. Eliza Lenheurr was in the office of the said J. Homer Williams, the said J. Homer Williams through his wife, who had charge of the collections of the office, collected two dollars from the said Mrs. Eliza Lenheurr; that the said J. Homer Williams did then and there, after he had procured the two dollars aforesaid, refuse either to do any dental work for the said Mrs. Eliza Lenheurr or to return the money to her; that when requested to do the work, the said J. Homer Williams ordered the said Mrs. Eliza Lenheurr out of the office, saying, 'You get out of here, haven't got time to fool with such people.'

"That the said J. Homer Williams in the county of Jackson, in the State of Missouri, at 1007 Main street, Kansas City, on the 8th day of June, 1908, wrongfully and fraudulently procured from Mrs. Eliza Lenheurr two dollars lawful money of the United States in the manner aforesaid, in violation of his professional duty as a practicing dentist and in violation of the laws of the State of Missouri.

"4. That the said J. Homer Williams has for the past year published false and fraudulent advertisements in the Kansas City Star and the Kansas City Times, a newspaper in Kansas City, Missouri, with a large circulation; that the following is one of the advertisements published by the said J. Homer Williams:

State ex rel. v. Purl.

**FREE, NO MONEY.**

All cleaning, gold alloy fillings and extracting by our new pain-
less methods, only 20 cents.

Pay part cost of material till Sept. 30.   Crowns $2;  Set of
Teeth $2.   Pyorrhea Cured.

Solid Teeth Made Without Bridges or Plates.  Loose Teeth
Tightened.  All work guaranteed. Descriptive book mailed
free.

**J. HOMER WILLIAMS, 1007 Main St.**

Open evenings till 8 o'clock.                    Sunday 9 to 4.

"The above advertisement appeared in the Kansas City *Star* on the following dates:  September 3, 1908; September 14, 1908, and in other issues of said paper.

"That the said J. Homer Williams published these advertisements for the purpose of soliciting and procuring, wrongfully and fraudulently, patients to submit themselves to dental treatment by him, that the statements contained in said advertisements are false and that said J. Homer Williams well knew them to be false when he made them, and the said J. Homer Williams intended thereby to deceive the public and to impose on the credulous and ignorant.

"That said Jean G. Strickland does say that the conduct on the part of J. Homer Williams is inimical to the health, safety and morals of the public and does ask the State Board of Dental Examiners to investigate the matter and things about which complaint is herein made and if you find them to be true, you revoke the license of the said J. Homer Williams."

While there are several questions presented and argued by counsel, yet there are but two vital propositions presented by this record.  The first is one of fact, and the second is one of law.  We will dispose of these questions in the order named.

I. Counsel for the relator insist that the evidence introduced does not support the charges made and preferred against him, nor the findings of fact made by the special commissioner, herein before set out.

While the record in this case is quite voluminous, covering about one hundred and fifty pages of printed matter, yet we have carefully read it throughout, and with great pains have considered and weighed the evidence applicable to each of said charges, and are fully satisfied that it sustains all four of them, as well as the findings made by the commissioner. In fact, we are unable to see how respondents or the commissioner could have reached any other conclusions than those disclosed by this record.

We are, therefore, of the opinion that relator was properly found guilty of the charges preferred against him by the respondents, and that the findings of the commissioner are fully supported by the evidence preserved in this record.

II. Counsel for relator next insist that a perpetual writ of mandamus should issue, notwithstanding the fact that relator was found to be guilty of the charges preferred against him. The basis of that insistence is that the statute which authorized the State Board of Dental Examiners to revoke his license to practice dentistry, is unconstitutional, null and void.

In order to determine that question it will be necessary to examine the provisions of the statute. It is section 8528, Revised Statutes 1899 as amended in 1905. [Laws 1905, p. 215.] It reads as follows as far as material to this cause:

"Any licensed dentist failing for a period of one year after the 30th day of November in each year hereafter to procure a renewal license as in this article provided, shall forfeit his original license and registration, and said dental board may, by order of record, cancel and annul any such original license and registration.

for such failure. Said dental board shall have power, after due notice in writing for twenty days and upon a full hearing at a time and place fixed in said notice to revoke and annul any original license or registration procured through fraud, deceit or misrepresentation, and in like manner to revoke and annul any original or renewal license or registration for fraud, deceit or misrepresentation in the practice of dentistry, or for gross violations of professional duties.''

The constitutionality of this statute is challenged in the language of counsel for relator, for the reasons that it is ''void for uncertainty; because the grounds for which it authorizes the revocation of a dentist's license have no fixed or determined meaning in law or elsewhere, but is left for its interpretation to the caprice and whims, the never-certain, ever-changing notions of dental ethics, of whoever happens at the time to compose the State Board of Dental Examiners.''

We are unable to lend our concurrence to these views of the learned counsel for the relator. The words of the statute, ''fraud, deceit or misrepresentation,'' have a well defined meaning not only at common law, but also in all the branches of English literature; and when the Legislature used them is this statute, it is to be presumed that it used them in their plain, ordinary and usual sense.

The word ''fraud'' is defined in Webster's dictionary as follows:

''1. Quality of being deceitful; deception deliberately practiced with a view to gaining an unlawful or unfair advantage; deceitfulness; deceit, trickery.

''2. *Law.* An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him, or to surrender a legal right; a false representation of a matter of fact (whether by words or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed) which deceives and

is intended to deceive another so that he shall act upon it to his legal injury. Often called actual fraud, or fraud in fact. In equity law the term fraud has a wider sense, and includes all acts, omissions, or concealments by which one person obtains an advantage against conscience over another, or which equity or public policy forbids as being to another's prejudice, as acts in violation of relations of trust and confidence. This is often called constructive, or legal, or equitable, fraud, or fraud in equity. Whether a fraud has been practiced in any case is a conclusion of law; the allegation of it must consist of a statement of the facts constituting it. Cf. Deceit.

"3. The means by which deceit is practiced; an artifice by which the right or interest of another is injured; an injurious stratagem; a deceptive device; a trick.

"4. One that practices fraud; one who perpetrates a fraud; a fraudulent person or thing; a cheat; impostor; humbug; as, that man is a fraud; the play was a fraud. Colloq.

"5. State of being defrauded or beguiled. Obs. Milton.

"Syn. Deception, deceit, guile, subtlety, craft, wile, sham, circumvention, stratagem, trick, imposition, cheat."

The same author defines the word "deceit" in the following language:

"An attempt or disposition to deceive or lead into error; any declaration, artifice or practice, which misleads another, or causes him to believe what is false; a contrivance to entrap; deception; a wily device; a trick; fraud.

"2. *Law.* Any trick, collusion, contrivance, false representation, or underhand practice, used to defraud another. When injury is thereby effected, an action of deceit, as it is called, lies for compensation. See fraud."

And the same author defines "misrepresentation" as follows: "Untrue, improper, or unfaithful representation; esp., false or incorrect statement of account, usually unfavorable; as, a misrepresentation of a person's motives. In popular use this word often conveys the idea of intentional untruth."

I have carefully examined most of the standard dictionaries, including law dictionaries, and find that all of them define the words "fraud," "deceit" and "misrepresentation" substantially alike—all expressing the same ideas but in different words.

By reading the various charges preferred against relator, it will be seen that each of them charges him with the perpetration of some fraud, deceit or misrepresentation upon his patients while in the practice of dentistry, and by means thereof he unjustly and illegally procured from them various sums of money.

All of these charges were clearly embraced within the provisions of section 8528 of the statutes. Counsel for relator, however, say that said section does not limit the board's power to revoke a license for the perpetration of fraud, deceit, and misrepresentation, but that it also authorizes the board to revoke licenses where dentists have been found guilty of "gross violation of professional duties," and that these words used in the statute have no well defined meaning either in law or elsewhere, and the section for that reason should be declared unconstitutional.

If those words stood alone in the statute, there would be much force in that contention, but when we read the entire section together it clearly appears that the Legislature used those general words to cover offenses similar to and belonging to the same general class as those denounced by the special or particular words which precede them. This is a well established and familiar rule of statutory construction. [State v. Dinnisse, 109 Mo. 434; St. Louis v. Herthel, 88 Mo. 128; State ex rel. v. Bersch, 83 Mo. App. 657.]

The books are full of adjudications upholding the validity of Statutes similar to the one in question, among which are the following: State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Hathaway, 115 Mo. 36; State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Medical Examiners, 32 Minn. 324; Board of Health v. McCoy, 125 Ill. 289; Williams v. People, 121 Ill. 84; Hawker v. New York, 170 U. S. 189; Dent v. West Virginia, 129 U. S. 114; Gray v. Conn., 159 U. S. 74; Reetz v. Mich., 188 U. S. 505; Meffert v. Medical Board, 66 Kan. 710; 1 L. R. A. (N. S.) 811; Affirmed in 195 U. S. 625; Board of Health v. Roy, 22 R. I. 538; Smith v. Medical Examiners, 117 N. W. (Ia.) l. c. 1118; State ex rel. v. Lutz, 136 Mo. 633; State ex rel. v. McIntosh, 205 Mo. l. c. 636; State v. Kellogg, 14 Mont. 426; State v. Schultz, 11 Mont. 429; State v. Adcock, 225 Mo. 335.

We are, therefore, of the opinion that the peremptory writ of mandamus should be denied, and that the temporary writ heretofore issued should be quashed and for naught held. It is so ordered. All concur.