ARTHUR G. LOGAN and AVERIL LOGAN, Petitioners Below, Appellants (in the Superior Court), Appellants, v. E. HOBSON DAVIS, State Tax Commissioner, Respondent Below, Appellee (in the Superior Court), Appellee.

(*April* 22, 1963)

SOUTHERLAND, Chief *Justice,* and WOLCOTT and TERRY, J. J., sitting.

*Arthur G. Logan* (of Logan and Boggs) *pro se* and for appellants.

*E. Norman Veasey* and *Ruth M. Ferrell,* Deputy Attorneys-General, for appellee.

Supreme Court of the State of Delaware, No. 78, 1962.

SOUTHERLAND, C. J.:

This is a State income tax case. The question is whether the facts justify a finding of gross understatement of income.

On April 27, 1955, Arthur G. Logan and Averil Logan, the appellants, filed their State income tax return for the year 1954. They set forth in the appropriate schedules of the return the amount of income they believed to be taxable. In Schedule C, relating to capital gains, they reported:

"Taxpayers' only capital gains during 1954 were from interstate transactions not taxable by the State of Delaware. See *Freeman v. Hewit,* 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265 and *Indiana Department of State Revenue v. Nebeker* (February 7, 1955), 348 U. S. 808, 75 S. Ct. 24, 99 L. Ed. 638 (Adv. sheets)."

On October 16, 1958 (more than three years later), the Tax Department advised the taxpayers that their returns for 1954, 1955 and 1956 did not include capital gains. On November 18 the taxpayers supplied the figures for 1955 and 1956, but did not supply the figures for 1954, on the ground that three years had passed and no assessment could be made.

The Department insisted on the information and petitioners supplied it, without waiving their rights.

On January 21, 1959, the Department assessed an additional tax upon two items: capital gains of $103,653.75 and disallowance of an alimony deduction of $7200. The net additional tax of $5,871.56 was found to be due, and a 100% penalty was added.

The taxpayers appealed to the Tax Board, asking that the assessment be vacated because the three-year period of limitation had expired, or alternatively, that the penalty be vacated. The Tax Board ruled against the taxpayer on the question of the three-year limitation but abated the penalty.

The taxpayers appealed to the Superior Court, which sustained the Board. The taxpayers now appeal to this Court.

We set forth the applicable statutes.

30 *Del. C.* § 1181 provides:

"(a) As soon as practicable after the return is filed, the Tax Department shall examine it and compute the tax and the amount so computed shall be the tax.

"(b) If the Tax Department discovers from the examination of the return or otherwise that the tax on the income of any taxable, or any portion thereof, has not been assessed, it may, at any time within three years after the time when the return was due, or if not filed on the due date within three years from the date the return was filed, assess the tax on the same and give notice to the taxable of such assessment and at the termination of 30 days, the additional tax determined by the Tax Department shall be due and payable unless the taxable or his agent or attorney shall have within said 30 days, filed complaint or appeal in writing over his signature from the assessment of the Tax Commissioner and requested a hearing before the Tax Board. The limitation of three years to the assessment of such tax shall not apply to the assessment of additional taxes upon returns which are fraudulent or the income thereon grossly understated or in cases where no return has been filed."

30 *Del. C.* § 1187 provides in part:

"(a) In any case where additional tax is found to be due, if it appears that the return was made in good faith and understatement of the tax is not due to any fault of the taxable there shall be no penalty added because of such understatement but interest shall be added to the amount of the deficiency at the rate of one-third of one per cent for each month or fraction of a month.

"(b) If it appears that the understatement of tax is due to negligence on the part of the taxable, there shall be added to the amount of the deficiency a penalty of five per cent thereof and, in addition, interest at the rate of one-third of one per cent per month or fraction of a month, which interest shall be on the amount of tax only.

"(c) If it appears that the return of income is grossly understated or is false or fraudulent, there shall be added to the tax on the additional income discovered to be taxable a

penalty of one hundred per cent, and in addition, interest added at the rate of one-third of one per cent per month or fraction of a month which interest shall be on the amount of tax only.

"(d) If any taxable, without intent to evade any tax imposed by this chapter fails to file a return of income, or pay a tax if one is due, at the time required by or under the provisions of this chapter, but shall voluntarily file a return of income and pay the tax due within thirty days thereafter, there shall be added to the tax a penalty equal to five per cent thereof and in addition interest at the rate of one-third per cent thereof and in addition interest at the rate of one-third per cent per month or fraction of a month, which interest shall be on the amount of tax only.

"If any taxable wilfully fails or refuses to file a return of income or to pay a tax if one is due within 30 days of the time required by or under the provisions of this chapter, there shall be added to the tax, a penalty of one hundred per cent thereof, and in addition, interest added at the rate of one-third per cent per month or fraction of a month, which interest shall be on the amount of tax only."

What is the meaning of the phrase "grossly understated"?

The two sections of the law must be read together. The exception in § 1181 from the three-year limitation in cases of gross understatement, fraud, or failure to file any return is based on the classification in § 1187, which fixes the penalties. That classification makes a most important distinction between negligence on the one hand and fraud, gross understatement, and wiful failure to file on the other hand. The penalty for the first is five per cent; for the second, one hundred per cent. This suggests that "gross understatement" imports something more than a mere large arithmetical difference between reported income and actual income.

The learned judge below held, as we read his opinion, that the taxpayers' return grossly understated their income because they reported, on the appropriate schedule, only about one-third of their income. As for the information given respecting capital gains, the court held it of no relevancy because of the taxpayers' duty to "report his gross income on his return without grossly understating it." The court thus held that if a great disparity between the actual gross income and reported income is shown, the good faith of the taxpayer, and the disclosure to the Commissioner of the existence of additional income, are immaterial.

We take a different view.

First, the use of the adjective "gross" itself suggests wrongful conduct. An analogous illustration is the phrase "gross negligence", often held to import wilful or wanton acts. One meaning of the word is "flagrant" or "shameful". *Webster's International Dictionary*, 2d Ed.

Second, its association in the statutes with false or fraudulent returns suggests, under the rule of *noscitur a sociis*, conduct somewhat similar. In *State ex rel. Williams V. Purl*, 228 Mo. 1, 128 S. W. 196, a statute regulating the practice of dentistry provided for revocation of a license for "fraud, deceit or misrepresentation in the practice of dentistry, or for gross violation of professional duties." The latter phrase was held to cover offenses "similar to and belonging to the same general class" as the first phrase. Moreover, the severity of the penalty, 100%, suggests the same construction.

Third, this construction is borne out by the history of the law.

The first income tax statute (Act of April 2, 1917, 29 *Del. L.* c. 26) provided for prompt assessment of income taxes by the State Treasurer before the first day of June "except in cases * * * of erroneous, false or fraudulent returns", in which case an assessment might be made in three years.

The amendments of 1921 (Act of March 29, 1921, 32 *Del. L.* c. 9) effected substantial changes, and embodied, in a general way, the statutory scheme since followed: a section classifying penalties for negligence, (Sec. 23, subd. 3), and for false or fraudulent returns (Sec. 23, subd. 4), and a section (Sec. 24) providing a two-year limitation on assessments which does not apply to cases of assessments of additional taxes "upon fraudulent returns."

The amendments of 1929 continued the same statutory scheme but added the phrase "grossly understated" to the sections of the 1929 act corresponding to Section 23, subd. 4 and Section 24 of the 1917 act. Thus, the first instance of the use of the phrase indicates that its purpose was to broaden somewhat the class of false or fraudulent returns. The suggestion of the Attorney General that "grossly understated" was substituted for "erroneous" in the 1917 act is clearly wrong, since the 1921 act intervened.

■■ We are of the opinion that to support a finding that income was "grossly understated" the circumstances must be such as to warrant an inference of wrongful conduct—something worse, as the statute clearly requires, than mere negligence. And, *a fortiori*, something more than an honest difference on the law. Of course, a very large arithmetical disparity between actual and reported income, may, in the circumstances of the case, justify such an inference. But always the circumstances must be examined, for the necessary finding of fact must rest upon all the evidence.

■ When we apply this principle to the facts of this case we find that the facts completely negative any inference of wrongful conduct. The taxpayers' return plainly told the Commission that they had capital gains, not reported because the taxpayers believed them not taxable under Federal law. This was sufficient to prevent a finding of "gross understatement" or even a finding of negligence. The matter was reduced to a good-faith dispute about the applicable prin-

ciples of law. Indeed, the Commissioner concedes that if the actual amount had been stated in the return (whether or not transferred to line 6 of the form), there would have been no "gross understatement," and presumably, if the information had been contained in a covering letter, the same concession would be made. At any rate, we can see no difference.

This exposes the fallacy of the Commissioner's position. From the information given in the return he could readily have learned the amount of the capital gains, either from the taxpayers' records or from the taxpayers' Federal return. In fact, he did the latter. He actually had the information in ample time to make the assessment within the three-year period. We do not mean that this fact is a decisive one. The controlling circumstance is the fact that the return put him on notice of income not specified or included in the return, and he was bound to act. The statute (§ 1181 (a)) so requires. *Cf. Colony, Inc. v. Commissioner of Internal Revenue,* 357 U. S. 28, 78 S. Ct. 1033, 2 L. Ed. 2d 1119. That case involved the provision of the federal statute extending to five years the period of limitation for assessments in respect of an "omission" from the return. It was held that the provision for the extra period for assessments contemplates a case where the Commissioner "is at a special disadvantage" in detecting errors. As the Court below said, the case is not directly in point, because the statutory language is different, but we think it presents an analogous situation. Here the Commissioner was at no disadvantage in obtaining at once the necessary information to make the assessment, as it was his duty to do.

The weakness of the Commissioner's case is also pointed up by the action of the Tax Board. The Commissioner, logically enough, imposed the 100% penalty. Obviously the Board realized the extreme unfairness of this part of the assessment and abated the whole penalty, although a finding of "gross understatment" would seem to call for at least some penalty.

The error in this case has been the assumption that a bona fide dispute between the taxpayer and the Commissioner with respect to taxable income, in a case where the Commissioner has the facts or is put on notice by the taxpayer with respect to the existence of the facts, can be converted into something analogous to fraud. The statute, in our opinion, does not permit of such a result.

It follows that the judgment below must be reversed, and the Commissioner's asessment must be vacated.