STATE OF MISSOURI at the relation of JAMES B. INSCHO v. MISSOURI DENTAL BOARD, Appellant.—98 S. W. (2d) 606.

Division One, November 12, 1936.

*Roy McKittrick*, Attorney General, and *Harry G. Waltner, Jr*, for appellant; *Yates & Wild* of counsel.

*George Halpern* for respondent.

FERGUSON, C.—In 1931 Dr. James B. Inscho, a duly registered and licensed dentist, under the statutes of this State requiring registration, was engaged in the practice of dentistry in Kansas City, Missouri. At a hearing, after the notice prescribed by Section 13567, Revised Statutes 1929, before the Missouri Dental Board, on September 2, 1931, the board made an order revoking Dr. Inscho's certificate of registration. Whereupon Dr. Inscho petitioned the Circuit Court of Jackson County for an alternative writ of mandamus directing the Dental Board to rescind its order, of September 2, 1931, revoking his certificate of registration to practice dentistry in this State, and to restrain the enforcement of the order. The alternative writ issued and the Dental Board filed a return thereto. Upon a hearing in the Circuit Court of Jackson County the finding was for the relator and petitioner; the decree and judgment of the court being that the order of the Dental Board revoking the certificate of registration was "unlawful, unjust and unreasonable;" and that the notice and complaint did not charge nor the evidence show any offense under, or violation of, Section 13566, Revised Statutes 1929, for which the Dental Board

is empowered by statute to revoke a certificate of registration. A peremptory writ of mandamus was issued commanding the board to rescind its order. The Dental Board appealed.

The circuit court had before it, and its finding and judgment was based upon, a complete transcript of the proceedings before the Dental Board; the notice, which includes the charge, the evidence before the board and its finding and order revoking the certificate of registration. That record is brought here by the appeal. The Dental Board is vested, by statute, with administrative and ministerial powers and duties and so long as its actions are within the scope of its powers and it exercises a reasonable discretion the courts will not interfere therewith but if, perchance, through some misunderstanding or misconstruction of the statute the board exceeds its power or acts beyond the scope of its authority or in the exercise of the powers given it acts arbitrarily and against the great weight of the evidence before it upon a given question, the aggrieved party may resort to an action of this kind. [State ex rel. McCleary v. Adcock, 206 Mo. 550, 105 S. W. 270.]

The act creating the Dental Board and regulating the practice of dentistry in this State empowers the board to revoke a certificate of registration for any of the causes therein enumerated and specified. We quote therefrom as follows: ''Section 13566 (R. S. 1929). Said Dental Board shall have power to revoke a certificate of registration or a license issued thereon upon any one of the following causes:

''1. If the registration or license is obtained illegally or fraudulently . . .

''2. The publication or circulation of any fraudulent or misleading statements as to the skill or method of any licensee or operator.

''3. Upon the commission and conviction of any criminal operation, or misdemeanor or felony, or chronic or persistent inebriety, or extended drunkenness or confirmed drug habit.

''4. Upon the publication or circulation by letters, circulars, newspapers, cards or otherwise where the licensee or person holding a certificate holds himself out to the public as a practitioner without causing pain, or advertising in any other manner with a view of deceiving or defrauding the public, or in any way that will tend to deceive or defraud the public, or in using, or advertising as using, any drug, nostrum or patent proprietary medicine of any unknown formula or any dangerous or unknown anaesthetic which is not generally used by the dental profession, or using, or advertising as using, any drugs, material, medicine, formula, system or anaesthetic which is either falsely advertised, misnamed or not in reality used or which has not the sanction and approval of the dental and medical sciences.''

The following subsections of this section specify other causes for revocation as follows: Subdivision 5, employment by a registered and

licensed dentist in the practice of dentistry, of any person not "regularly registered and licensed;" Subdivision 6, the violation of "any of the provisions" of the dental act; Subdivision 7, failure or refusal to keep "his office and dental equipment in a thoroughly clean and sanitary condition;" Subdivision 8, failure to procure the annual license required by the act.

In the present case the notice served on Dr. Inscho, which the statute (Sec. 13567, R. S. 1929) requires "shall specify the offenses . . . which the accused shall be expected to respond to," charged him "with violation of Section 13566, Revised Statutes 1929 (supra), in that you have been guilty of: (1) The publication and circulation of misleading statements as to your skill and method in the practice of dentistry. (2) Advertising through newspapers and through statements to patients, such advertising and such statements being made in such a way that will tend to deceive and defraud the public." Such is the charge itself. The notice then states: "You have caused to be published in newspapers having a large circulation in Kansas City and vicinity the following advertisements." Twenty-seven advertisements, admittedly published by Dr. Inscho in Kansas City newspapers on various dates from March 16, 1930, to August 2, 1931, inclusive, are set out. Then follows statements of four persons, former patients, who state, in substance, that they had dental work done by Dr. Inscho and paid him therefor but same was not satisfactory. Concluding the notice states: "It is further charged that you habitually tell your clients . . . . that you guarantee all your work . . . that the language used in the advertisements above set out tend to mislead the public as to your skill as a dentist; that your frequent statement (in the newspaper advertisements) that you were in charge of plate work at Camp Funston during the war has a tendency to convince everyone that you are exceptionally skillful in plate work; that the advertisements above set out as a whole tend to mislead the public as to the skill of J. B. Inscho as a dentist." It is further alleged, "that you are not skillful in your plate work, that you are not a competent dentist and that you do not give satisfaction in the work you do and that therefore your statements to your clients and your statements in the advertisements above set out are misleading and in violation of the statute," referring to Section 13566, supra, which sets out the causes for which the board is empowered to revoke a certificate of registration or license.

It will be noted that the first division of the charge is stated in the language of a part of subsection 2 of Section 13566, supra; and that the second division of the charge is evidently based upon a portion of subsection 4 of said section. Subsection 4 specifies, among others, as a cause or ground for revocation, "the publication or circulation by letters, circulars, newspapers, cards or otherwise . . .

as a practitioner without causing pain, or advertising in any other manner with a view of deceiving or defrauding the public, or in anyway that will tend to deceive or defraud the public.'' The second division of the notice charges Dr. Inscho with ''advertising through newspapers and through statements to patients, such advertising and such statements being made in such a way that will tend to deceive and defraud the public.'' Dr. Inscho, as respondent here, and we shall so refer to him, makes the contention that the language of subsection 2 and that part of subsection 4 (of Sec. 13566, supra) which reads, ''or advertising in other manner with a view of deceiving or defrauding the public, or in anyway that will tend to deceive or defraud the public,'' is so general, vague and indefinite that said subsection 2 and that part of subsection 4 set out are invalid, ineffective and inoperative and do not define an offense. In this connection respondent cites Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, where this identical language, being a part of subsections of a statute identical with subsections 2 and 4, supra, was under examination and such portion of the statute was held to be too uncertain and indefinite for enforcement though the remainder of the section was held valid. A former dental act in this State empowered the Dental Board ''to revoke and annul . . . license or registration for fraud, deceit or misrepresentation in the practice of dentistry.'' A dentist published false advertisements in newspapers. Upon charges of fraud and deceit in the practice of dentistry the board revoked his registration. The statute was attacked ''for uncertainty'' but this court held the language of the statute sufficiently definite and that the facts alleged charged the perpetration of fraud, deceit or misrepresentation in the practice of dentistry. [State ex rel. Williams v. Purl, 228 Mo. 1, 128 S. W. 196.] However with the view we have of this case we deem it unnecessary to discuss the sufficiency of this portion of the statute but taking the statute as we find it certainly a charge based upon that part of the statute here asserted as cause for revocation should be definitely and specifically stated. The charge should advise the accused of the statements alleged to have been made and published by him as to skill or method in the practice of dentistry and in what way or manner same are fraudulent or misleading and in what way or manner the advertisements published in the newspapers tend to deceive or defraud the public. It hardly suffices to give notice, as here, that the accused is charged with the publication and circulation of misleading statements as to skill and method and advertising in a newspaper in such a way as tends to deceive and defraud the public without stating wherein or how or in what way the statements relied upon are misleading or the advertisements in newspapers, which are set out, tend to deceive or defraud the public. No statements to patients are set out unless that reference be to the statements made

in the newspaper advertisements which are set out. It is not charged that any of the statements made in the newspaper advertisements set out in the notice make claim to any superior skill or a certain standard of skill on the part of Dr. Inscho. Some described methods of plate work and materials used but it is not charged that same were false or untrue or that the methods and materials so advertised constituted a violation of the latter part of Section 13566 which makes it cause for revocation for a dentist to advertise "as using any drug, nostrum or patent proprietary medicine of any unknown formula or any dangerous or unknown anaesthetic which is not generally used by the dental profession, . . . or advertise as using any drugs, material, medicine, formula, system or anaesthetic which is either falsely advertised, misnamed or not in reality used or which has not the sanction and approval of the dental and medical sciences." The only approach to a definite or specific allegation of any kind as to wherein or how the twenty-seven newspaper advertisements set out tended to deceive or defraud the public or were misleading is that the statement therein that Dr. Inscho was "in charge of plate work at Camp Funston during the late war was a tendency to convince everyone that you are exceptionally skillful in plate work" and it is later charged "you are not skillful in your plate work." It is not charged that the statement in the advertisement that he "had charge of plate work at Camp Funston during the late war" was untrue or false. The charge aside from the general language alleges little, if anything, more specific than that respondent caused the twenty-seven advertisements set out to be published in newspapers. However unethical or unprofessional we, and the large majority of the dental profession, may consider advertising to be it must nevertheless be borne in mind that the dental act not only does not prohibit advertising but in fact recognizes the right of a dentist to do so subject however to the restrictions set out therein. A charge that amounts to no more than that a dentist advertised in a newspaper does not state an offense or cause under the statute for revocation of his registration. We are inclined to the conclusion that the charge herein fails to sufficiently state any cause within the statute for revocation of license or registration.

Nor does the evidence make out a cause within the statute for such revocation. The twenty-seven advertisements, admittedly published by respondent, and date of each respectively, were offered in evidence. These advertisements related to prices for dental work, methods and materials used in plate work, and most of them contained the statement: "Dr. Inscho was in charge of plate work at Camp Funston during late war" or similar statement. The longest of the advertisements was that published May 10, 1931. It contains substantially all the matter which at various times appeared in the other advertisements and we therefore set it out here as illustrative of the nature and type of the newspaper advertisements:

554

"Genuine Hecolite Plates $17.50
"Alcolite Plates at Same Price
"20th Century Gold Pin Teeth—
"Hundreds of Sets to Pick From
"How We Make Our Hecolite Plates.

"All of our plates are made from impressions taken with French's select Plaster of Paris, except in a few cases where some teeth remain. These impressions are coated with Gilbert's Imperial Varnish. Then a model on which to build the plate is made, by running Coecal Stone into the impression. Coecal is a new stone for models. It has crushing strength of 10,000 lbs. per sq. inch. Setting expansion of 10-100 to 12-100%. This is the finest material made for this purpose.

"From these models trial bites are built and fitted into the mouth to maintain the same relation of the gums. Then the bites are placed on the models and mounted on an articulator (a device that has the same action as the jaws). The teeth are then set upon a hard base plate wax and tried in the mouth of the patient, so that he may see just how they will be when finished.

"If the teeth or the arrangement of the teeth is not satisfactory, they are easily changed—which we are glad to do.

"When the patient is satisfied with the teeth and set up, they are placed back on the coecal model and put in a metal flask. Coecal stone is poured over the top of the wax and teeth, making a die and counter die, holding each tooth in place with Coecal Stone. The wax is then boiled out and Hecolite is pressed in its place with heat and pressure.

"After the plates are pressed and cooled they are taken from the flask. The excess Hecolite is cut away and the plate is polished. This completes the process and the result is: 'A beautiful, strong Hecolite Plate.'

"Dr. Inscho was in charge of plate work at
Camp Funston during the war.
"Other Plates as low as $7.50; 22K Gold Crown &
Bridge Teeth as low as $3.50
Fillings $1.00 and up.
"Broken Teeth Replaced in Plates in 30 Minutes.
"Broken Plates Repaired, $1.00
"Additional charge for Lost Parts.
"I have purchased the business of Dr. C. H. Brown, Dentist, formerly 107 East 12th St. Please see me for any information regarding his work.
"Dr. James B. Inscho
and Associate Dentists
925-27 Walnut St., 2nd Floor   HA. 0909
"Open Sundays and Evenings.
"The Commerce Trust is Opposite My Office.
"Any Hour at Night Call President Hotel."

As we have pointed out, it was not charged nor was any evidence whatsoever offered tending to show that any statement made in the advertisements was false or untrue or that Dr. Inscho did not, would not or could not do the dental work prescribed at the prices therein specified or that he did not use the materials or methods described, or that the methods and material advertised were not approved by and did not have the sanction of dental science or that any misrepresentation was made in these advertisements about prices, materials, method, or experience. All that is shown about these advertisements is that Dr. Inscho caused them to be published and that in itself is not enough. As we have noted the statute does not forbid advertising and unless there is a showing that the advertising is fraudulent and misleading as to skill or method or that it tends to deceive or defraud the public no cause for revocation is made out. The complainants made no attempt to show falsity or misrepresentation in any of the statements made in advertisement. The only statement in any of the advertisements which is claimed in anyway relates to skill is that "Dr. Inscho was in charge of plate work at Camp Funston during the war." It is charged that the statement "has a tendency to convince everyone that you (Dr. Inscho) are exceptionally skillful in plate work" and it is argued that the statement conveys the impression or suggestion that Dr. Inscho is very skillful in plate work. Complainants made no effort to prove that the statement was false. If advertising is permitted a truthful statement of one's experience can hardly be classed as fraudulent and misleading. Dr. Inscho as a witness before the board, in his own behalf, was asked on cross-examination if he was in charge of plate work at Camp Funston during the war and stated that he was. He was then asked for what period of time he was so employed. He stated that he was in sole charge of all plate work at Camp Funston during the war from September to sometime in January of the following year when his service terminated. The argument is now made that the statement in the advertisement conveys the impression to the public that he was in charge of plate work at Camp Funston throughout the duration of the war but the fact being that he was in charge of that work at Camp Funston for only about five months during the war the statement should be branded as misleading and as tending to deceive the public. Such a strained construction is too insubstantial to constitute cause for revocation of the certificate of registration. A mere statement of the proof in State ex rel. Williams v. Purl, supra, which appellant cites, so distinguishes that case that comment is not required. In that case the proof before the Dental Board was that the dentist advertised to do certain dental work for twenty cents "but always charged more;" that he advertised to furnish "the best set of teeth for one dollar" but did not do so and it was shown "such set of teeth

556

could not be bought by the dentist in the first place for less than two dollars;'' that he advertised that he '' 're-enameled teeth' whereas no such thing was known in dentistry as 're-enameled' teeth;'' that he advertised '' 'teeth made without bridges or plates' whereas such work was unknown to dentistry;'' and other like false representations in advertising were shown but it would unduly prolong this reference to set them all out here and those stated are illustrative. It was held that such false and untrue advertising constituted fraud and deceit in the practice of dentistry and cause, under the statute, then in effect, for revocation of license.

The other evidence offered by complainants consists of the testimony of five former patients of Dr. Inscho and that of Dr. Porter and Dr. Rinehart, teachers in the Kansas City-Western Dental College in Kansas City, who testified as experts. Charles Hoffman testified that in April, 1930, his wife employed Dr. Inscho to make ''a complete set of false teeth;'' that his wife ''did not succeed in wearing the teeth;'' that she went back to Dr. Inscho several times and he ''worked on the teeth'' but the teeth were never satisfactory. This set of artificial teeth was then produced and was examined by Dr. Porter who gave it as his opinion that the ''right side is too thin and too short'' and ''a plate of this kind couldn't possibly possess adhesion.'' A Mrs. Riney was the next witness. She stated that she was having some dental work done by a Dr. Brown; that ''on one trip to Dr. Brown's office she found a notice pasted on the door that Dr. Inscho had taken over Dr. Brown's work;'' that she thereupon went to Dr. Inscho; that some bridge work done by Dr. Inscho was never satisfactory and had caused her constant pain. Dr. Rinehart was called to examine this bridge work and gave it as his opinion that the work had not been ''efficiently done'' and that it ''does not comply with standards of bridge work.'' A Mrs. Brentlinger testified that she desired to have some dental work done; that ''a lady . . . told her Dr. Inscho was a fine dentist;'' that she had him make an ''upper plate;'' that she was never able to successfully wear the plate and later had a new plate made by another dentist. Dr. Porter then examined the plate and stated: ''So far as I can tell this plate is alright outside the patient's mouth.'' Upon placing the plate in Mrs. Brentlinger's mouth Dr. Porter gave an opinion that, ''It does not seem to be adapted to her mouth.'' On cross-examination he said he was ''unable to say whether this plate would have fit her mouth when delivered to her in May, 1931.'' (This hearing was in September, 1931.) Both Dr. Porter and Dr. Rinehart admitted that changes in tissues and in health and other conditions may and frequently do affect the successful use and wearing of dentures and on account thereof ''dentures may become too loose for comfort or efficiency although they may still serve to improve the appearance.'' Mrs. Brent-

linger stated that she had not seen any advertisement by Dr. Inscho and that she "would not have gone to him had" she "known he was an advertiser." W. A. Button testified that in May, 1931, he had Dr. Inscho "make an upper plate;" that "it never would fit" and he "was not able to use it;" that he went back several times to see Dr. Inscho about it and "Dr. Inscho would take it and grind it;" that he did not see any advertisement by Dr. Inscho and did not know that he was an "advertising dentist." Dr. Porter then examined the plate and testified that in his opinion it "does not fit the mouth." E. E. Hart a man then past the age of seventy years testified that Dr. Brown was doing dental work for him, had made temporary plates, and that he received a card through the mail saying Dr. Inscho "had taken over Dr. Brown's contracts;" that he then went to see Dr. Inscho "who made my permanent plates," which he was wearing at the time of the hearing; that "I have to use powder to keep them in my mouth;" and that he "didn't believe anyone could make them fit." Dr. Porter examined the plates and gave an opinion, that "the occlusion is faulty on the left side and they seem loose in his mouth." Dr. Porter admitted on cross-examination that he observed that the witness "had a quiver of the lower jaw" and that "a general nervous condition was apparent; all of which tended to make wearing dentures a little unfavorable."

None of these five patients testified that they had ever seen an advertisement by Dr. Inscho or that they were induced or caused to go to him for work through or by an advertisement or that they were misled or deceived by any advertisement. Two said they did not know he was "an advertising dentist" and Mrs. Brentlinger said, "I would not have gone to him had I known he was an advertiser." The others were not asked about advertising but Hart stated that he went to Dr. Inscho to have permanent plates made upon receipt of a card saying Dr. Inscho "had taken over Dr. Brown's contracts" and Mrs. Riney went to Dr. Inscho pursuant to the notice she found posted at Dr. Brown's office. It does not appear why Mrs. Hoffman went to Dr. Inscho. In four of the five cases "plate work" was complained of as unsatisfactory; in the other case the complaint was of bridge work. Dr. Inscho estimated that in the year next preceding the hearing he had made "in the neighborhood of 1500 plates." Appellant says that the purpose of this testimony was to show, and that it does show, that Dr. Inscho was incompetent, lacking in skill, in the doing of plate work. Though the statutory cause for revocation referred to in the charge and upon which the charge purports to be based is advertising by fraudulent and misleading statements and in a way tending to deceive or defraud the public it is sought by this testimony to show that Dr. Inscho was incompetent and indirectly to revoke his registration for incompetency. The competency of a

dentist is determined when he successfully meets the test prescribed by statute and the Dental Board acting thereunder and if the board finds that he possesses the requisite skill it issues a certificate of registration evidencing that he "has been registered as a person who is competent to practice dentistry in this State." [Sec. 13560, R. S. 1929.] ■ We do not find any power conferred by our dental act upon the Dental Board to revoke a certificate of registration because in their opinion a registered dentist fails in some phase of dentistry or in some instance or in certain cases to do work commensurate with the standards of skill which the members of the board may fix and deem proper standards of efficiency. The statutes in some states empower the board to revoke the license of a dentist for "gross ignorance or inefficiency in his profession" (see Laws of Oregon 1933, p. 210) but our dental act does not. If we assume that the plate work in the four cases in evidence to be inefficient and unsatisfactory nevertheless that in itself and alone, does not constitute a cause, under our statute, for revocation nor is that the charge accused was called upon to meet. If that had been within the powers conferred upon the board and was the basis of the complaint then accused should have been notified thereof and afforded an opportunity to meet it. The charge went to fraudulent, misleading and deceptive advertising but no attempt was made to show that any false statements were made in the advertisements. The theory seems to have been that since it was shown, by expert testimony, that one plate was not properly made, and that in three other instances, while no criticism was made of the workmanship, the plates did not fit the mouth and were not satisfactory, though, in at least one of these cases, physical conditions were such as were not conducive to the successful wearing of dentures, that therefore Dr. Inscho was not a competent and skillful dentist and the advertisements, though truthful in statement, must be considered as fraudulent and misleading and as tending to deceive the public. In this connection it is argued that the statement in the advertisement that he was in charge of dental work at Camp Funston during the war, though truthful, was calculated to convey the impression Dr. Inscho was competent and skilled in plate work and that it was shown in the four cases, already noted, that plate work done by him was not satisfactory that therefore the statement in the advertisement was fraudulent, misleading and deceptive. Such a theory does not make out an offense, under the statute, as we view the letter, spirit and intent of the statute which, while it recognizes and sanctions advertising by a dentist, strikes at false, fraudulent and deceptive statements made in advertising matter. As well reason that by holding himself out and truthfully stating in an advertisement that he held a certificate of registration issued by the Missouri Dental Board a dentist would be guilty of fraudulent and deceptive advertis-

ing if it were shown that in some cases the work done was not satisfactory.

Apparently the statute was misconstrued which resulted in an erroneous finding and order by the Dental Board under the charge and evidence in this case. It follows therefore that the judgment of the circuit court must be affirmed. It is so ordered. *Hyde* and *Bradley*, CC., concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.