In the Matter of A. J. Rust, Appellant, v. Missouri Dental Board. —155 S. W. (2d) 80.

Court en Banc, August 22, 1941.

Rehearing Denied, October 25 1941.

*Joe E. Burris* for appellant.

618

620

*Igoe, Carroll, Keefe & McAfee* and *J. Wesley McAfee* for respondent.

622

 ELLISON, J.—The appellant, a licensed dentist, appeals from a judgment of the Circuit Court of St. Louis City revoking his license and certificate. The hearing in that court was *de novo*, on appeal from a like order made by the Missouri Dental Board after a hearing under Sec. 10071, R. S. 1939, Sec. 13566, Mo. Stat. Ann., p. 7486, pocket part. The assignments of error are: (1) that. the parts of said Sec. 10071 upon which the proceedings rest are so vague and indefinite as to violate the due process clause of the Fourteenth Amendment, Constitution of the United States, and Sec. 30, Art. II, Constitution of Missouri; (2) that the specifications of the verified, written accusation are similarly defective, state no offense under the statute, and did not give the board or the court jurisdiction; (3) that the evidence was insufficient to support the judgment; (4) and that the judgment permanently revoking appellant's license inflicts cruel and unusual punishment, contrary to Sec. 25, Art. II, Constitution of Missouri.

An opinion was written in Division II, in which the writer then concurred, overruling the first of the above assignments—as to the validity of the statute—but sustaining the second assignment—as to the insufficiency of the accusation. This made it unnecessary to consider the third and fourth assignments. LEEDY, C. J., dissenting, the cause was transferred to the court en banc. On reargument a majority of the court have concluded the judgment should be affirmed.

All the acts of which appellant was convicted consisted in advertising in a manner allegedly forbidden by said Sec. 10071. Among other things that statute provides (parentheses ours): "Any dentist may have his or her certificate of registration or license, or both, revoked or suspended by the Missouri Dental Board for any of the following causes: . . . 3. For unprofessional or dishonorable conduct, . . . Unprofessional conduct shall include, but not by way of limitation, . . . (a) advertising, directly or indirectly, prices for professional services; (b) advertising, directly or indirectly, by means of large display, glaring light sign, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head; (c) employing or making use of, directly or indirectly, advertising solicitors or free publicity press agents. . . ."

In the hearing before the Missouri Dental Board, and at the beginning and end of the circuit court trial appellant interposed a plea to the jurisdiction, raising said constitutional questions because of the vagueness of the statute. Though there is no formal entry of it, the court necessarily must have overruled the plea, because appellant

was found guilty under each of said three clauses of paragraph 3 of the statute. As already stated, he makes the same challenge here, contending the terms "professional services," "indirectly," "large," "advertising solicitors" and "free publicity press agents," as used in said paragraph 3 are vague and uncertain, have no well defined meaning, are not defined in the law, and their meanings are left to the idiosyncrasies of the varying personnel of the Missouri Dental Board and the courts.

Since these attacks upon the constitutionality of the statute require us to decide whether it is susceptible of any reasonable construction let it be said at the outset that both parties concede: the right to practice the profession of dentistry is a valuable right; and the statute authorizing the Missouri Dental Board to revoke a license thereto is penal in nature. But appellant insists that since the statute is penal it must be strictly construed, citing such cases as Diemer v. Weiss, 343 Mo. 626, 122 S. W. (2d) 922; whereas respondents assert it should receive a liberal construction because its purpose is to safeguard the public health, citing State ex rel. Horton v. Clark, 320 Mo. 1190, 1199, 9 S. W. (2d) 635, 638 (4), and State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 234-5, 65 S. W. (2d) 943, 950. The latter decision held the expressions "unprofessional and dishonorable conduct" and "bad moral character" in the statute there involved were not so vague as to make it unenforceable; and that they covered any conduct which by general opinion and common judgment would be considered unprofessional and dishonorable, in addition to particular acts specified in the statute. [See also 5 A. L. R. 94, and 54 A. L. R. 404, note.]

What is liberal construction and what is strict, is hard to determine. It is said the latter is in the interest of those whose rights are to be protected. But among them, under the Constitution, is the accused. The fact that conduct denounced by a statute is flagrant, or its object wholesome, does not mean the defendant should suffer from the mere fact of accusation. On the other hand it is said strict construction prevents the infliction of penalties in cases not plainly within the statute, which necessarily means, not within legislative contemplation. The truth is that the meaning of the language of a statute is narrowed or broadened to conform to the legislative intent, as gathered from its entirety, history, purpose, etc. It was well said in Meyering v. Miller, 330 Mo. 885, 892, 51 S. W. (2d) 65, 68, quoting from Endlich on Interpretation of Statutes, sec. 329, p. 452: "The rule of strict construction 'has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote

its object.' " Similarly, the mere term "liberal construction" should not entice the judicial mind into the legislative field.

■ Reading the law as a whole, we think the term "professional services" is sufficiently defined for the purposes of the case by Sec. 10087, R. S. 1939, Sec. 13582, Mo. Stat. Ann., p. 7494, pocket part, which elaborately prescribes what shall be regarded as the practice of dentistry. The term "indirectly," as used in the expression "advertising directly or indirectly," has its usual and, in fact, primary meaning: not directly; obliquely; in a roundabout manner; dishonestly. [Webster's New International Dictionary.] It means the same in law. [21 Words & Phrases (Perm. Ed.), p. 167.]

The word "advertising" as used in the statute, obviously aims beyond mere public speaking before civic or social organizations, as appellant speculates. It has been defined in many cases, the purport of which is that the term signifies giving public notice, especially by printed matter, such as circular letters, pamphlets, newspapers and magazines. [2 Words & ■ Phrases (Perm. Ed.), p. 616.] It is a matter of common knowledge, and we can therefore take judicial notice of the fact, that advertising would also include such publications by hand bills, signs, bill boards, sound trucks and radio.

Appellant opines that the words "advertising solicitors" mean solicitors *of* advertising, and therefore do not make sense in their context. But they may also mean solicitors who advertise, just as an advertising dentist would be a dentist who advertises. So also a "free publicity press agent" would be a press agent who obtains free publicity (not paid advertising) for the dentist. All the above words and expressions except the first, which the statute defines, are plain enough and there is no merit in appellant's contentions concerning them.

But more serious questions are presented by clause (b) of said paragraph 3, which, as already stated, forbids (italics ours): "advertising directly or indirectly, by means of *large* display, glaring light sign, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head." Appellant asserts the word large is so vague and indefinite as to furnish no standard by which his conduct could be guided and adjuged; and that the clause is therefore unconstitutional. Respondents, taking issue, call attention to a provision some thirty-nine lines further down, in the next paragraph, which permits the display of a dentist's name on the windows and door of his office, in letters not higher than seven inches. Respondents' theory is that this latter provision gives a clue to the meaning of the word large, and makes clause (b) forbid advertising by display if the letters exceed seven inches in height, but permits it if they are within that size.

We cannot approve that construction. The whole context of the statute contemplates only restrained, circumspect advertising. It

permits professional cards 3½ x 2 inches, giving only the name, title, degree, specialty, office hours, office and residence addresses and telephone numbers. The same information in public print can occupy only two inches in one column. A later provision does permit the display of like information on the windows and door of the office, the dentist's *name* to be in letters not more than seven inches high; but that is vastly different from *general advertising* of the same size. In fact the latter provision is necessary to harmonize with another statute, Sec. 10065, R. S. 1939, Sec. 13560, Mo. Stat. Ann., p. 7481, which *requires* a practicing dentist to have his name on his outer office door in letters not less than two nor more than seven inches high. This seemingly was to facilitate ascertainment of whether practicing dentists are licensed and registered. Another statute, Sec. 10074, R. S. 1939, Sec. 13569, Mo. Stat. Ann., p. 7489, forbids any person to practice dentistry under any name other than his own, and as registered and licensed. All these facts lead us to believe clause (b) of paragraph 3 does not by implication permit general advertising in letters seven inches high, but stands by itself for construction.

If this be true, what is the meaning of "large" in the clause? It has been said the word is a relative term, and does not indicate size except in a comparative sense. [City of Vincennes v. Spees, 35 Ind. App. 389, 74 N. E. 277, 280.] If a criminal statute made the theft of *large* cattle a felony and those of less size only a misdemeanor, or no offense at all, would it be intelligible and could it be enforced? Doubtless not in many cases, if at all. Yet in other jurisdictions statutes containing provisions much like clause (b) have been upheld.* The statute in the Semler case was exactly like clause (b) here; and those in three other cases all used the adjective "large" as applying to displays or signs. Yet in no one of them was there a discussion of the question raised here. In some states the statute forbids all advertising except designated kinds. In the last two cited a State Board had made definite rules about advertising supplementing the statute. Of these, the Modern System Dentists case comes nearest to touching the question.

It says: "When is a piece of advertising made by means of large display . . . ? What size letter constitutes 'display?' What is a large sign?" Then the decision continues with the observation that the State Board of Dental Examiners is empowered by the Wisconsin statute "to further expand or amplify these provisions . . . under its power to find as a matter of fact what is and what is not

---

*Semler v. Dental Examiners. 294 U. S. 608, 79 L. Ed. 1086, 55 Sup. Ct. 570;
 Sherman v. State Board of Dental Examiners (Tex. Civ. App.), 116 S. W. (2d) 843;
 Modern System Dentists, Inc., v. State Board of Dental Examiners, 216 Wis. 190, 200, 256 N. W. 922, 926(4);
 Shor v. Miller, 48 Dauphin County Rep. (Pa.) 39.

within the terms of the statute and to make rules accordingly." Later the opinion states: "In advertising parlance the word 'display' refers to size of type (citing Webster's New International Dictionary). Under a contract for display advertising, a printer would not be called upon to set the advertising matter 'solid.'" The Dictionary defines display, as applied to printing, thus: "Varying arrangement of lines, as by the use of unequal lengths or different styles or sizes of type faces; also, matter thus printed." And display advertising means "Advertising not under specific headings in newspapers, magazines, or trade papers."

Our statute does not authorize the Missouri Dental Board to make rules defining unprofessional conduct. It was held in State ex rel. Spriggs v. Robinson, 253 Mo. 271, 291, 161 S. W. 1169, 1174(9), that such authority could not be delegated by the Legislature. On a kindred question that case was disowned by Division I in State ex rel. Lentine v. State Board of Health, supra, 334 Mo. l. c. 236, 65 S. W. (2d) l. c. 951. And our decisions en banc have more than once announced the well-established doctrine to the contrary, that the General Assembly may delegate the police power to agencies created by it if the statute, though general, sufficiently discloses the legislative intent, and leaves to such agencies only the interpretive power of filling in of details and the duties of administration. [State ex inf. Crain v. Moore, 339 Mo. 492, 498-9, 99 S. W. (2d) 17, 21(6); State ex rel. Public Serv. Co. v. Latshaw, 325 Mo. 909, 919, 30 S. W. (2d) 105, 108(3).]

But, as we say, no such authority has been delegated and no rules have been established by the Dental Board. Nevertheless, the appellant cannot challenge the validity of the statute on hypothetical grounds. The question necessarily must be involved in the case before the court. [59 C. J., sec. 179, p. 621.] The popular meaning of the word "large" in its context in the statute would be: exceeding most other things of like kind in quantity or dimensions. [Webster's New International Dictionary.] Therefore, under the formula of the Lentine case, supra, 334 Mo. l. c. 234-5, 65 S. W. (2d) 943, 950, the expression "large display" must mean, display advertising exceeding most other of like kind in quantity or dimensions, according to general opinion and common judgment. If the advertising admitted done by appellant was that, then clause (b) is not vague and uncertain as to him.

We think the evidence shows it was, as we shall later attempt to demonstrate. In addition to that the statute, as already observed, contemplates reserved, circumspect advertising. Further, the part here under construction is not directed against the general public like a criminal statute, but is for the regulation of a profession, whose members ordinarily would know more about its ethical standards than a layman would know about general criminal or regulatory law. So

we conclude appellant cannot attack Sec. 10071 because of its use of the word large, regardless of what the conclusions might be in a case on different facts.

But appellant contends clause (b) is vague in another respect. Remember the clause with its context provides that any dentist may have his license revoked for unprofessional conduct, which latter shall include, but not by way of limitation . . . Then follows a great number of clauses, separated by semicolons, enumerating many specific acts. One of these is the mooted clause (b) which provides: "advertising, directly or indirectly, by means of large display, glaring light sign, or containing as a part thereof the representation of a tooth," etc. Appellant says it is impossible to tell whether all of the acts mentioned in the clause must concur to constitute the conduct denounced, or whether some one or more of them alone would offend. This amounts to querying whether the clause, properly construed, runs in the conjunctive or in the disjunctive.

We think the latter is obviously the correct view. The whole section is enumerating *different* forbidden acts. Wherever a conjunction is used it is the disjunctive particle "or." The substantive in the clause is the verbal noun "advertising," which is qualified by three phrases: by means of large display; by glaring light sign; or containing as a part thereof the representation of a tooth, etc. The last phrase does not qualify either of the two preceding phrases, but refers back to advertising. This is clear because it is separated by the disjunctive or. And if advertising by the mechanical methods of large display, alone, or glaring light sign, alone, would constitute unprofessional conduct, it would be contradictory to annex the further condition that the advertisement must also *portray* teeth, etc. "Or" is seldom used in penal statutes other than as a disjunctive, 48 C. J., sec. 7, p. 1127; 30 Words & Phrases (Perm. Ed.), p. 75. A single use of it may express an alternative as between each of a series of words. [Cherry Lake Farms v. Love (Fla.), 176 So. 486, 488.] Without doubt any one of the several acts denounced by clause (b) of Sec. 10071, supra, would constitute unprofessional conduct. For the reasons stated in the preceding part of the opinion we hold the statute is not unconstitutional as assigned by appellant.

The next assignment is that the written accusation was so vague and indefinite that it failed to apprise appellant of the charges against him, thereby depriving him of due process of law. The accusation contained seven charges numbered consecutively, of which four were sustained. These latter, in substance, were (we quote the charging part) that while engaged in the practice of dentistry at two specified locations, one in the City of St. Louis and one in the County of St. Louis and during a period of two months and thirteen days from September 7 to November 20, 1937, the appellant had been guilty of unprofessional conduct in said places is that he:

"(1) Advertised directly and indirectly prices for professional services;

"(2) Advertised directly and indirectly by means of large display;

"(4). Advertised directly and indirectly by means of large display containing as a part thereof the representation of teeth;

"(7) (a) caused and (b) permitted a corporation entitled Dr. Rust Dentists Laboratory, Inc., to advertise prices for professional services; to advertise by means of large display; to advertise by means of large display containing as a part thereof the representation of teeth, and to employ and make use of advertising solicitors in such manner as to attract or attempt to attract members of the public to the offices of A. J. Rust at 620 Washington Avenue, St. Louis, Missouri, and at 6203 Easton Avenue, Wellston, Missouri, where said A. J. Rust and his employees are engaged in the practice of dentistry, in order that such members of the public might come to those offices for dental treatment, care and attention and there receive the same from the employees of said A. J. Rust practicing dentistry therein."

The first day of the period alleged, September 7, 1937, was the day after Sec. 10071, supra, went into effect. However, it has been approved over six months before on March 15. [See Laws Mo. 1937, pp. 494, 616.] Appellant filed before the Missouri Dental Board a motion to make the accusation more specific; and by motion and plea in the circuit court sought dismissal of the proceeding on the same ground. The charges are all substantially in the language of the statute, except the latter part of the seventh, which is fuller. The Missouri cases cited by appellant are: State ex rel. Inscho v. Missouri Dental Board, 339 Mo. 547, 552, 98 S. W. (2d) 606; State ex rel. Lentine v. State Board of Health, supra, 334 Mo. 220, 65 S. W. (2d) 943; State v. Maher, 232 Mo. App. 998; 124 S. W. (2d) 679; State v. Asher (St. L. Ct. App.), 216 S. W. 1013.

None of these decisions pass on the statutes here involved. They were all written before it was enacted. In the Maher case, decided by the Springfield Court of Appeals, a mayor was prosecuted for failure to suppress "certain" gambling houses and brothels which had flourished in his city for a long time. But the indictment did not specify the location of any of them or the names of any of the persons connected therewith. In the Asher case, decided by the St. Louis Court of Appeals, the defendant was charged with being a delinquent child, in that she had on a specified day knowingly associated with vicious and immoral persons, without naming them. Both charges were quashed as being too vague, for failure to give the information indicated. Both decisions cited Sec. 22, Art. II, Constitution of Missouri, providing that "in criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation;" and both held an indictment or information may charge a criminal offense in the language of the statute only when

the latter describes the entire offense by setting out the facts constituting it.

The Lentine case does say a charge preferred against a licentiate must be so far certain as to advise him of the specific acts or conduct alleged to be unprofessional. But that was *obiter*. The proceeding there was against a physician under Sec. 9990, R. S. 1939, Sec. 9120, Mo. Stat. Ann., p. 5082. The section authorized revocation of licenses of registrants of "bad moral character," or those "guilty of unprofessional or dishonorable conduct." Following that was an enumeration of specific acts. The appellant was charged generally with such conduct, elaborated by a concrete charge that he had been a party to a "diploma mill," which offense was not included in ▇▇▇ those specific acts. The appellant contended the general words in the statute were limited by the enumeration of particulars following, and that it did not cover the diploma mill charge. The notice or complaint was challenged only in the sense that the statute upon which it was based did not support the charge. But the court upheld the statute, as we have already seen earlier in the opinion, and sustained the order of revocation.

The Inscho case, against a dentist, was based on Sec. 13566, R. S. 1929, Mo. Stat. Ann., p. 7486. That was before the 1937 reenactment. The statute then was directed at fraudulent advertising; as to skill; painless treatment; deceiving or defrauding the public; using nostrums, etc. The opinion, taking the statute as it stood, held the initial notice or complaint should advise the accused of the statements alleged to have been made in the advertising, and wherein they were fraudulent or misleading, or tended to deceive the public. At that time Sec. 13567, R. S. 1929, Mo. Stat. Ann., p. 7487, required the notice served on the accused to "specify the offenses against this chapter which the accused shall be expected to respond to." No provision was made for a court review of the finding and order of the Dental Board, though Sec. 13567, supra, did authorize the taking of a stenographic report of the proceedings at the request and expense of the accused. The order of the Board in the Inscho case, and in the only others* under the same statute that ever reached this court, were challenged by mandamus. Orders of the State Board of Health in similar proceedings against physicians are reviewable by a statutory certiorari which brings up the full record of the Board, including all the evidence. [Sec. 9990, supra.] The point is that in all these proceedings the whole record made before the administrative board was crucial and binding.

The present Sec. 10071 requires the written accusation to be written and verified by someone familiar with the facts therein charged.

---

*State ex rel. Wolfe v. Mo. Dental Board, 282 Mo. 292, 221 S. W. 70;
State ex rel. Williams v. Purl and Mo. Dental Board, 228 Mo. 1, 128 S. W. 196.

The Board shall, if it deem it sufficient, make an order for a hearing and cause a copy of the order and the accusation to be served on the accused. Throughout, the statute refers to the charging part of the accusation as "the charges." It does contemplate, as indicated a few lines above, that *facts* shall be charged, but it does not say the accusation shall "specify the offenses . . . which the accused shall be expected to respond to," as did the former statute. Neither do the specifications of the statute, upon which the instant proceeding is based, include the ingredient of fraud. They are simply overt acts of advertising: prices for services; by large display; and by methods portraying teeth. These latter were purely mechanical acts. Only the 7th charge, of using advertising solicitors, called for proof of the intervention of other specific persons. And the statute allows an appeal as a matter of right within thirty days, with a trial *de novo* before a 'constitutional court.

So far as mere certainty in the charges is concerned, surely there could be no better "bill of discovery" for the latter trial than the previous hearing before the Dental Board. Defending trial lawyers are familiar with the practice of making no contest in a justice of the peace court, or at a preliminary hearing in a criminal case, and simply listening to the evidence introduced by the plaintiff. Even in the criminal law great latitude is allowed in the indictment or information on some matters, for instance: whatever time is alleged, the proof may show any time within the period of limitation, State v. Pigg, 312 Mo. 212, 226, 278 S. W. 1030, 1034; and as to intent and perpetration, an ordinary charge of first degree deliberate murder will admit proof merely of homicide in the commission of another felony, or by a co-conspirator in the execution of a conspiracy to which the defendant was a party. [State v. Nasello, 325 Mo. 442, 457-8, 30 S. W. (2d) 132, 136.]

We think the accusation and trial in this case would foreclose a similar proceeding for the offenses alleged. The accusation definitely stated the venue and the time. The allegation that the advertising was done "during" the period of two months and thirteen days between specified dates was a charge that it was done throughout that period, 13 Words & Phrases (Perm. Ed.), p. 685; if not, it was still valid. [State v. Woodard (Mo. Div. 2), 130 S. W. (2d) 474, 475(5).] It charged overt, continued, and public acts of which the appellant could not fail to know, if guilty. Section 22, Article II of the State Constitution did not apply to the proceeding, though it would have in a criminal prosecution for the same acts under Sec. 10082, R. S. 1939, Sec. 13577, Mo. Stat. Ann., p. 7493. The proceeding was to a degree penal. Yet, after all, its purpose was merely to revoke for unprofessional conduct a license to practice dentistry theretofore granted. And the initial proceeding before the Board did not have

the finality of a criminal trial, or even a proceeding for revocation of a physician's license.

We do not treat such proceedings lightly, and realize that professional men who have shaped their lives in reliance on the franchise granted them, have much to lose if it is taken away. But such proceedings are affected with a vital public interest and have a practical side. Viewed in that aspect, it is idle to say appellant did not and could not know what he was charged with. The closest question is on the mere charge of "large" display advertising. In some cases that classification might be very close or arbitrary. But it cannot be when applied to display advertising which is large by common consent according to the usage of dentists operating within the spirit and purpose of the statute. Further, if the word large be rejected as surplusage, display advertising portraying teeth would violate the statute. The charges in the accusation were in the conjunctive and supported any of them proven. [State v. Barr, 326 Mo. 1095, 1101, 34 S. W. (2d) 477, 480.] We therefore rule this assignment against the appellant, though we think it would have obviated difficulty if the facts had been pleaded more explicitly.

■ With references to appellant's guilt there can be no doubt. He operated a dentists laboratory at 620 Washington Avenue in St. Louis and a smaller place at 6203-A Easton Avenue in Wellston, St. Louis County. The one on Washington Avenue had 5000 square feet of floor space, one-third of which was occupied by the laboratory, and the remainder by dental offices. There was a line of demarcation between the two, but they were communicating. Patients entering the place would be received by a common "receptionist" for both enterprises. The laboratory was incorporated under the name "Dr. Rust Dental Laboratories, Inc." It advertised widely. But Dr. Rust personally did not after the 1937 Act went into effect.

The contention of the Dental Board was that the laboratory corporation and its advertising were carried on to attract business to Dr. Rust and his subordinate dentists professionally. He was the head of both activities. The laboratory did the work of taking X-ray pictures, making dental plates, repairing and refurbishing them. The dentists would examine the teeth and render various kinds of professional services, such as extracting, treating or filling teeth, taking moulds of teeth and gums, fitting the plates, etc. The laboratory technicians did not work on the patients. If a patient should come in for dental work, or to have a plate made or refitted, the attendant would inform him he would "have to see a dentist." And Dr. Rust admitted on the stand that he didn't give his own dental force any of the worst of it, if the patient should ask that a dentist be recommended.

The advertising of the corporation tended to attract attention to the professional side of the business, and to the appellant, Dr. Rust,

personally. At his instigation the corporation had cards printed, which were publicly circulated. They bore the name "Dr. Rust, Lab. Inc." and said: "Let us carry your entire dental account. Pay as little as $1.00 per week." He testified this merely meant the corporation would loan money to persons so they could pay their entire dental bill in small installments. There was another line: "Have your work done by reputable dentists." This, he said, meant *any* reputable dentist. The price quoted for X-rays was $2.50. He also had an advertising company prepare and place on the front and rear of street cars in St. Louis advertising placards 21x27 inches in size, which publicized the corporation and portrayed a full upper set of teeth in a gum or plate. The addresses given were those also occupied by the two dental offices. Dr. Rust's name was in large print, the word "Dentists" in smaller letter, and below these in much smaller print appeared "Lab. Inc." A photograph of one of these placards is set out below. Unquestionably this advertising was intended to inure to the benefit of the professional side of the business; and we think we can take judicial notice of the fact that it was "large display," as compared with common usage.

Regarding the contention that the revocation of appellant's license was cruel and unusual punishment. There are no extenuating circumstances, so far as we can see. An offer of proof was made and excluded that he was an advertising dentist in Chicago with nine offices until a regulatory law was passed in Illinois. Then he

went to Wisconsin and practiced there as the Painless Parrmer Company until a regulatory law excluded him. [See Rust v. State Board of Dental Examiners, 216 Wis. 127, 256 N. W. 919.]

The instant proceeding was heard by the Missouri Dental Board in March, 1938. The trial in the circuit court occurred in June, 1939. Sometime that year before the trial, appellant had a pamphlet printed and circulated in St. Louis and vicinity. At the head appeared his name, "Dr. A. J. Rust, Dentist," and his two office addresses. It was addressed "To the People of Missouri," and was a diatribe on the prevailing high charges in dentistry. It challenged "Missouri's Dental Organization." On the witness stand he characterized the Dental Board as a kangaroo court, and said there was more mechanical skill than medical skill in dentistry; and that he thought dentists should be allowed to advertise. He was against the law. Dr. Rust's professional history and all this recalcitrance were competent evidence on the question of whether revocation of his license was cruel and unusual punishment.

We think the judgment of the trial court should be affirmed. It is so ordered. All concur except *Tipton, J.,* not sitting.